UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------X

ANGEL FELICIANO, SABRINA LACY,                    MEMORANDUM & ORDER
CHRISTOPHER OLUJOBI, JOSEPH DERRICK,              04-CV-5321
DOLORES BROWN, JUANA ACEVEDO, MARIO
CEDENO and LESLIE A. SCOTT (For
Themselves and on behalf of all other
Persons similarly situated),

                        Plaintiffs,

          - against -

COUNTY OF SUFFOLK, RICHARD DORMER,
JOHN DOE #1 through 40 (being Suffolk
County Police Officers who stopped or
searched plaintiffs), JOHN DOE #41
through 50 (being unidentified
ranking police officers who
supervised JOHN DOE #1 through 40),

                        Defendants.
--------------------------------------X
Appearances:
For Plaintiffs:               KC Okoli, Esq.
                              Law Offices of KC Okoli, P.C.
                              330 Seventh Avenue, 15th Floor
                              New York, New York 10001

                              Emmanuel Roy, Esq.
                              Agbayewa & Roy, P.C.
                              67 Wall Street, Suite 2211
                              New York, New York 10005

For Defendants:               William G. Holst, Esq.
                              Jennifer K. McNamara, Esq.
                              Rachael C. Anello, Esq.
                              Suffolk County Attorney's Office
                              100 Veterans Memorial Highway
                              P.O. Box 6100
                              Hauppauge, New York 11788

SEYBERT, District Judge:

<u>INTRODUCTION</u>

Plaintiffs Angel Feliciano, Sabrina Lacy, Christopher Olujobi, Joseph Derrick, Dolores Brown, Juana Acevedo, Mario Cedeno and Leslie Scott, commenced the instant class action, alleging violations of 42 U.S.C. §§ 1981, 1983 and state law claims for negligent hiring, training and supervision against Defendants County of Suffolk, Suffolk County Police Commissioner Richard Dormer, and several unidentified officers and supervisors within the Suffolk County Police Department ("SCPD"). Plaintiffs contend that the SCPD has adopted a policy of racial profiling in the context of motorist traffic stops.

Pending before the Court is Defendants' motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons explained below, Defendants' motion is GRANTED, in part, and DENIED in part.

<u>BACKGROUND</u>

The following facts, gleaned from the Complaint, are deemed true and are construed in a light most favorable to the Plaintiff for the purposes of this motion. See <u>King v. American Airlines</u>, 284 F.3d 353, 356 (2d Cir. 2002).

The putative class action Complaint names eight different individuals. The class is defined as "All non-White (African American and Hispanic) motorists who have been illegally stopped, detained, and/or searched by one or more SCPD officers while motoring in Suffolk County." (Compl. ¶ 30.) Plaintiffs allege that the SCPD has "relied upon race in conducting motorist stops, drug interdictions and contraband activities, and in so doing has engaged in a continuing pattern and practice of discrimination for a prolonged time period." (Id. ¶ 23; see also id. at ¶ 26.) The Complaint specifically recounts the experiences of five of the eight named Plaintiffs.

Plaintiff Angel Feliciano

Plaintiff Feliciano is a Hispanic male employed by the New York City Police Department. He complains of two separate interactions with the SCPD. First, on or about March 19, 2004, Feliciano was pulled over by unidentified SCPD officers while "lawfully driving along a public street in Suffolk County." (Compl. ¶ 44.) Feliciano avers that, while there was "no probable cause" to detain him, the SCPD officers "ran [his] plates" and "continued to harass [him]." (Compl. ¶ 45-46.) The officers only ceased harassing Feliciano when he identified himself as a New York City police officer. (Compl. ¶ 46.)

Feliciano's second interaction with SCPD officers

occurred on May 5, 2004. According to Feliciano, he was parked across the street from his home, when a police cruiser "pulled up to his side." The officers — who were the same officers involved in the March incident — inquired as to what Feliciano was doing. Feliciano avers that "there was no probable cause for the officers to approach him and [the officers] only did so because he is non-White." (Compl. ¶ 47.)

Plaintiff Christopher Olujobi

Plaintiff Olujobi is an African American male. He also alleges two "run-ins" with the SCPD. On June 20, 2004, Olujobi was traveling with his friends in the Town of Brentwood when he was pulled over by two Suffolk County police officers, and asked for his driver's license and registration. (Compl. ¶ 48.) One of the officers informed Olujobi that he was stopped because: (1) his music was too loud; and (2) he failed to signal a turn. Olujobi maintained his innocence of both violations. (Compl. ¶ 50.) Olujobi was subsequently questioned as to whether he was transporting any drugs; Olujobi responded in the negative, and then asked the officer whether he questioned all people that he pulled over in such a manner. (Compl. ¶ 51.) Eventually, one of the officers returned Olujobi's information, stating "Hey you're on parole, don't give my partner no shit!" (Id. ¶ 52.) Olujobi

was not cited for any violation.[1]  After the incident, Olujobi

went to the Third Precinct to file a complaint.  According to

Olujobi, the officers refused to give him a complaint form, and

refused to document his claims.  (Id. ¶ 53.)

Olujobi's second interaction with the SCPD occurred on

June 29, 2004.  This time, Olujobi was driving with two friends

through Central Islip.  Olujobi was pulled over and was informed

that he was speeding.  (Id. ¶ 54.)  The officer requested

Olujobi's driver's license and registration, and requested

identification from the other passengers.  After delaying Olujobi

and his companions for approximately 15 minutes, the SCPD officer

returned the identifications.  Olujobi was never issued a

citation for speeding.

Olujobi avers that, on both occasions, he "was stopped

by White police officers and had not done anything which would

provide . . . the officers probable cause to stop him."  (Id.

¶ 56.)

Plaintiff Sabrina Lacy

Lacy is an African American female who is a member of

---

[1]    Also of note, while Olujobi was complying with the request
for his driver's license and registration, one of his companions
was asked to exit the car.  It is unclear whether the companion
actually exited the car or was searched by the SCPD officer.
(Id. ¶ 49.)

the United States Army Reserves.  In April 2004, Lacy was pulled over in Shoreham, New York for talking on her cellular telephone. Lacy explained to the SCPD officers that she was military personnel (she was in uniform) and that she was on the phone discussing injuries to troops in Iraq.  According to Lacy, the two SCPD officers began yelling at her, and arguing with each other as to whether or not to issue her a summons.  (Id. ¶¶ 59-61.)  Lacy alleges that she was detained for more than 20 minutes and that the officers let her go without issuing her a ticket. (Id. ¶ 61.)

Plaintiff Dolores[2] Brown

Brown is an African American female.  On January 4, 2004, while driving to her home, she was stopped by SCPD officers, ostensibly because she had a broken tail light.  The officers requested her driver's license and registration, and directed that she exit her car.  (Id. ¶ 62.)  According to Brown, the officers detained her for "the next two hours," making inappropriate comments about her age and searching the car and all of her belongings, but never gave her a ticket.  (Id. ¶¶ 63-64.)

---

[2]    The Court notes that the Complaint utilizes two different spellings of Ms. Brown's name.  The Court adopts the spelling of "Dolores Brown" displayed in the caption.

<u>Plaintiff Leslie A. Scott</u>

Plaintiff Scott is an African American female. She claims to have testified at a "trial" as an eye witness to "members of the SCPD beating up a handcuffed man." (<u>Id.</u> ¶ 65.) After testifying to the incident, Scott alleges that "she began to be stopped on a regular basis by the police and harassed," but was never given any tickets. (<u>Id.</u>) While not specifying any dates, Scott claims that she was stopped seven times over an eight to ten month period. (<u>Id.</u> ¶ 66.)

Scott filed a claim with the SCPD Internal Affairs Department, but was informed that "there was no evidence of wrongdoing by the police officers." (<u>Id.</u> ¶ 67.)

<u>The Remaining Named Plaintiffs</u>

The Complaint's only references to Plaintiffs Joseph Derrick, Juana Acevedo, and Mario Cedeno (the "Remaining Named Plaintiffs") are found in Paragraphs 10, 12 and 13. Each of the Plaintiffs is described as a person that is either African American or Hispanic and who "regularly uses the roads of Suffolk County as a motorist and is either African American or Hispanic." (Compl. ¶¶ 10, 12, 13.)

<u>UPN 9 News Report</u>

As evidence of an alleged county-wide custom or

practice of discrimination, Plaintiffs cite to an investigative report conducted by UPN News 9. (Compl. ¶ 24-27.) As part of the report, UPN 9 sent an African American motorist and a Caucasian motorist to travel through different parts of Suffolk County. According to Plaintiffs, the African American motorist was consistently pulled over, while the Caucasian motorist was never stopped. (Compl. ¶ 25.) Plaintiffs claim that SCPD officers were stopping African American motorists "for absolutely no reason other than the fact that such motorists were African American." (Id.)

The UPN 9 report also contained an interview with Defendant Dormer, who commented on the aforementioned footage. Dormer stated "this is not racial profiling, but good police work." (Compl. ¶ 26.)

Juxtaposed with Dormer's statement is Plaintiffs' allegation that:

> Suffolk County and Dormer allowed and encouraged . . . police officers, including John Does to stop, detain or search motorists based on matches with a race-based 'drug courier' profile that explicitly targeted young Black and Hispanic males wearing certain kinds of clothes; driving expensive cars; carrying beepers; and/or in possession of cellular telephones. Upon information and belief this 'profile' has continued to be used by the SCPD.

(Compl. ¶ 27.)

Plaintiffs' Alleged Injuries

Plaintiffs, on behalf of the putative class, have filed claims against all Defendants pursuant to §§ 1981 and 1983. In addition, Plaintiffs have filed a state law claim against Suffolk County and the Supervisory John Doe Defendants for negligent hiring, training and supervision of police officers. Plaintiffs claim that, as a result of Defendants' discriminatory conduct, Plaintiffs — and all other members of the putative class — "have suffered and continue to suffer irreparable loss and injury, including but not limited to economic loss, humiliation, embarrassment, physical and emotional distress, mental anguish, low self-esteem, and a deprivation of their civil rights." (Id. ¶ 68).

DISCUSSION

I.  Standard Of Review On A Motion To Dismiss[1]

A district court should grant a motion to dismiss only if "'it is clear that no relief could be granted under any set of facts that could be proved consistent with allegations.'" H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 249-50, 109 S. Ct. 2893, 106 L. Ed. 2d 195 (1989) (quoting Hishon v. King &

_____

[1]  The Court declines Defendants' request to convert the instant motion into a motion for summary judgment.

9

Spaulding, 467 U.S. 69, 73, 104 S. Ct. 2229, 81 L. Ed. 2d 59 (1984)). In applying this standard, a district court must "read the facts alleged in the complaint in the light most favorable" to the plaintiff and accept these factual allegations as true. H.J. Inc., 492 U.S. at 249; see also Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 165, 113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993) (noting the Federal Rules' liberal system of notice pleading).

In deciding a motion to dismiss, the district court's duty "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Sims v. Artuz, 230 F.3d 14, 20 (2d Cir. 2000); see also Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The appropriate inquiry, therefore, is not whether a plaintiff's claims are ultimately meritorious, but whether the plaintiff is entitled to offer evidence to support them. See Ricciuti v. New York City Transit Auth., 941 F.2d 119, 123-24 (2d Cir. 1991) (plaintiff is not compelled to prove his or her case at the pleading stage).

Additionally, a plaintiff is not required to set out in detail the facts upon which he or she bases a claim. Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). A

plaintiff need only give a statement of his or her claim that will give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." Id.  Therefore, where a complaint is filed that charges each element necessary to recover, the dismissal of the case for failure to set out evidential facts can seldom be warranted.  See U.S. v. Employment Plasterers' Ass'n, 347 U.S. 186, 189, 74 S. Ct. 452, 98 L. Ed. 618 (1954).  Moreover, pleadings are more liberally construed where, as here, 'the plaintiff alleges civil rights violations. . . .'"  Tsai v. Rockefeller Univ., 137 F. Supp. 2d 276, 280 (S.D.N.Y. 2001) (quoting Cruz v. Gomez, 202 F.3d 593, 596 (2d Cir. 2000) (quoting Chance v. Armstrong, 143 F.3d 698, 701 (2d Cir. 1998))).

However, allegations that are so baldly conclusory that they fail to give notice of the basic events and circumstances of which a plaintiff complains are meaningless as a practical matter and, as a matter of law, are insufficient to state a claim.  See Barr v. Abrams, 810 F.2d 358, 363 (2d Cir. 1987).

II.  The Breadth Of Plaintiffs' Claims

The breadth of Plaintiffs' claims is difficult to decipher.  The Complaint specifically lists three "Counts," or claims, for violations of §§ 1981, 1983 and for negligent hiring

and supervision. The "Prayer for Relief," however, contains references to several other statutes, including Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 1985, 1086, New York Executive Law § 296, New York Civil Rights Law § 40 and New York State Human Rights Law § 296.2(a). The Court cannot tell whether Plaintiffs intend to allege any claims pursuant to these statutes. Based on Plaintiffs' briefing in this action, it appears that Plaintiffs only allege three claims - those outlined in the Complaint as "Counts."

Accordingly, to the extent Plaintiffs allege any claims pursuant to any of the statutes that are not listed among Plaintiffs' "Counts," those claims are hereby DISMISSED, without prejudice. See Wynder v. McMahon, 360 F.3d 73, 77 (2d Cir. 2004) (recognizing that Rule 8 requires that a complaint must "give the defendant fair notice of what the plaintiff's claim is" (internal quotations omitted)).

III. Plaintiffs' Section 1983 Claims

In order to state a claim for relief pursuant to 42 U.S.C. § 1983, "a plaintiff must allege that (1) the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the

United States." <u>Snider v. Dilaq</u>, 188 F.3d 51, 53 (2d Cir. 1999); <u>see also</u> <u>Dwares v. New York</u>, 985 F.2d 94, 98 (2d Cir. 1993) (overruled on other grounds).

Here, there is no dispute as to whether the challenged conduct was perpetrated by officials acting under the color of state law. The only issue is whether Plaintiffs have adequately alleged a violation of their constitutional rights. The Court details the numerous objections raised by each of the Defendants.

## A. <u>Objections Common To All Defendants</u>

There are two objections to Plaintiffs' § 1983 claims that are common to all Defendants. First, all Defendants claim that Plaintiffs' allegations are too vague to satisfy the notice pleading requirements of Rule 8. Second, all Defendants argue that Plaintiffs have not properly relied upon an appropriate constitutional right in support of their claim. The Court considers each argument in turn.

### 1. <u>Rule 8 Objections</u>

A challenge to the vagueness of the allegations contained in a Complaint implicates the notice pleading requirements of Rule 8 of the Federal Rules of Civil Procedure. <u>See</u> Fed. R. Civ. P. 8. According to Rule 8(a)(2), a complaint need only include "a short and plain statement of the claim

showing that the pleader is entitled to relief." <u>Leatherman v.</u>
<u>Tarrant County Narcotics Intelligence and Coordination Unit</u>, 507
U.S. 163, 168, 122 L. Ed. 2d 517, 113 S. Ct. 1160 (1993)
(citations omitted). "The Federal Rules of Civil Procedure do not
require a claimant to set out in detail the facts upon which he
bases his claim." <u>Id.</u> (citations omitted).  Rather, Rule 8
requires only "a short and plain statement of the claim" which
will provide the defendant with adequate notice of the grounds
for the plaintiff's claims.  <u>Id.</u> (citations omitted).

Defendants contend that the Complaint falls short of
the notice pleading requirements of Rule 8.  Defendants argue
that the Complaint contains nothing more than "conclusory
averments" that Defendants "target African-American motorists for
illegal stops . . . harassing [them] because of their race and/or
color."  (Def.'s Mem. of Law at 1.)  According to Defendants,
"Plaintiffs fail to provide the necessary factual and/or legal
basis to support such claims."

As a threshold matter, the Court notes that Defendants'
argument appears to conflate a summary judgment standard of
review with the notice pleading requirements of Rule 8.  Were
Defendants proffering an objection to Plaintiffs' claims pursuant
to a summary judgment motion, Plaintiffs would be required to set

forth the evidence supporting their case. When considering a Rule 8 objection, however, the Court is only concerned about the notice provided to a defendant such that the defendant may adequately respond to a plaintiff's allegations. Under such a standard of review, the Complaint, as to named Plaintiffs Feliciano, Olujobi, Lacy, Brown and Scott plainly satisfies Rule 8's requirements.

As to these Plaintiffs, the Complaint alleges specific traffic stops whereby each was, allegedly, impermissibly detained. Many of the named Plaintiffs provide specific dates for their interactions with the SCPD. Further, as evidence that the traffic stops were predicated upon Plaintiffs' race, Plaintiffs rely upon a UPN 9 News report, and an alleged "drug courier profile" created by the SCPD that explicitly targeted African American and Hispanic males. (Compl. ¶¶ 24-27.) Finally, according to Plaintiffs, racial profiling was endorsed by Suffolk County Police Commissioner Dormer. As to Plaintiffs Feliciano, Olujobi, Lacy, Brown and Scott, the Court finds that the Complaint provides Defendants with adequate notice of the charges against them such that they may frame a responsive pleading. See Wynder, 360 F.3d at 77.

However, pursuant to Rule 8, the Court hereby DISMISSES the § 1983 claims - and all other claims filed - by Plaintiffs Derrick, Acevedo and Cedeno. Indeed, even under a most liberal reading of the Complaint, these Plaintiffs have not alleged any facts outlining the contours of any cognizable claim. To the extent these Plaintiffs possess claims pertinent to the instant action, Plaintiffs are granted leave to amend the Complaint to explain what these claims are.

2. <u>Violation Of A Constitutional Right</u>

The Complaint alleges that "Defendants have violated Plaintiffs' right to be free from unreasonable search and seizure by the Government in violation of 42 U.S.C. § 1983." (Compl. ¶ 70.) The reference clearly implicates Plaintiffs' rights guaranteed by the Fourth Amendment. <u>See</u> U.S. Const. Amend. IV. In addition, the Complaint alleges, throughout, that the County has impermissibly engaged in a practice of racial profiling. Such an allegation obviously concerns Plaintiffs' rights guaranteed by the Equal Protection Clause of the Fourteenth Amendment. <u>See</u> <u>Perez v. City of New York</u>, No. 97-CV-2915, 1999 WL 1495444 at *4 (Nov. 16, 1999).

The analysis of the adequacy of Plaintiffs' constitutional claims, however, is not that simple. The Supreme

Court has established certain "constraints" limiting a person's ability to challenge an allegedly unconstitutional traffic stop. The analysis starts with the Fourth Amendment. In the context of traffic stops, the Supreme Court has explained that, "[t]emporary detention of individuals . . . even if only for a brief period and for a limited purpose constitutes a 'seizure' of 'persons' within the meaning of [the Fourth Amendment]." Whren v. United States, 517 U.S. 806, 810, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996). In determining whether a Fourth Amendment violation has occurred, the Court examines the reasonableness of an officer's conduct. But the inquiry is objective; and therefore challenges to an officer's alleged discriminatory intent are not entertained. Indeed, as explained in Whren, the Supreme Court has "foreclose[d] any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved." Whren, 517 U.S. at 813.

The corollary of this holding is that where reasonable suspicion[2] supports an officer's determination to stop an

_____

[2] Defendants make much of Plaintiffs' use in the Complaint of the term "probable cause" when referencing each of the traffic stops. But Plaintiff's failure to allege the correct legal term of art does not change the gravamen of their allegations. Moreover, for the reasons set forth in the remainder of this Order, the distinction is not as pertinent as Defendants suggest.

automobile, a plaintiff's Fourth Amendment challenge to the
constitutionality of the stop must fail. Id. at 813-14; see also
Gonzalez v. City of New York, No. 99-CV-9128, 2000 WL 1678036 at
*5 (S.D.N.Y. November 8, 2000) ("An investigative stop by a
police officer may be deemed reasonable if it is supported either
by probable cause or reasonable suspicion, provided the
reasonable suspicion is based on specific and articulable facts
indicating that the individual stopped is engaged or about to
engage in unlawful activity.").

Here, Defendants argue that Plaintiffs' Fourth
Amendment § 1983 claims are precluded by Whren because the
gravamen of Plaintiffs' allegations concern the subjective intent
of the SCPD officers conducting traffic stops. This argument is
partially correct. In so far as Plaintiffs challenge otherwise
justifiable traffic stops based on an impermissible race-based
criteria, Whren clearly provides that the proper vehicle is "the
Equal Protection Clause, not the Fourth Amendment." Id. at 813.

But Plaintiffs' allegations are not so limited.
Plaintiff Feliciano alleges that he was stopped, without any
reason, solely because of his race. Such a claim alleges a
violation of both the Fourth and Fourteenth Amendment. See U.S.
v. Swindle, 407 F.3d 562, 566 (2d Cir. 2005) (recognizing that

the Fourth Amendment requires reasonable suspicion in conducting a traffic stop).

Plaintiffs Olujobi and Brown, while recognizing the proffered reasons for their respective stops, claim that they were innocent of any violation. They, too, would have a valid Fourth Amendment claim. Surprisingly, Plaintiff Scott does not even allege an Equal Protection claim. However, her averments that she was stopped on numerous occasions by SCPD officers who lacked any legitimate reason to stop her alleges a Fourth Amendment claim.

Even Plaintiff Lacy, assuming facts in a light most favorable to her, arguably was stopped without any justification. New York's Vehicle and Traffic Law § 1225-c does not place a blanket prohibition on drivers engaging in telephone conversations while in motion. See N.Y.V.T.L. § 1225-c. Rather, § 1225-c only bars drivers from engaging in telephone conversations without the use of a "Hands-free mobile telephone."[3] Thus, Lacy's averment that she received a "call on her cell phone," (Compl. ¶ 57), and that she was pulled over for using her cellular phone does not, per se, establish the propriety of her stop.

---

[3]    There are also exceptions made for emergency situations and certain official personnel. See N.Y.V.T.L. § 1225-c.

Moreover, notwithstanding any preclusive effect that _Whren_ may ultimately have on Plaintiffs' claims, Plaintiffs have sufficiently alleged a policy or custom of race-based enforcement of the laws in violation of their Fourteenth Amendment Equal Protection rights. See _Whren_, 517 U.S. at 813; _Brown v. City of Oneonta_, 221 F.3d 329 (2d Cir. 2000) (distinguishing between a § 1983 Fourteenth Amendment claim where the city has "an established profile" implementing race as a criteria, and a claim where the race-based criteria originated "not with the state but with the victim" of a crime); see also _Perez v. City of New York_, No. 97-CV-2915, 1999 WL 1495444 at *4 (Nov. 16, 1999) (denying the City's motion to dismiss plaintiff's claims where plaintiff alleged a "municipal policy [of racial profiling] and a causal link between that policy and the constitutional violation.")

In short, Plaintiffs, Feliciano, Olujobi, Brown, Scott and Lacy have adequately alleged constitutional violations to support their § 1983 claims. Plaintiffs' claims with respect to stops based upon impermissible race-based criteria arise under the Fourteenth Amendment, while Plaintiffs' claims that officers stopped them without the requisite probable cause arise under the Fourth Amendment.

B.    Plaintiffs' Monell Claims

Defendant Suffolk County argues that Plaintiffs have
not adequately alleged an official policy or custom of denial of
constitutional rights that would permit a finding of municipal
liability.   According to the County, "plaintiffs have failed to
articulate factual basis for their claims that the County has
adopted an official custom or practice of racially motivated
stops but merely assume a custom or practice of race-based stops
because plaintiffs were stopped and happened to be non-white."
(Defs.' Mem. of Law at 5.)   The County trivializes Plaintiffs'
claims, describing them as reliant "upon a media report which is
simply anecdotal without any statistical or other rational
basis."   (Id. at 6.)   The Court disagrees with the County's
characterization of Plaintiffs' allegations and finds that
Plaintiffs have sufficiently alleged a Monell violation.

As acknowledged by all Parties, in order to impose
liability against a municipality pursuant to 28 U.S.C. § 1983, a
plaintiff must allege that the violation of his constitutional
rights was part of a governmental custom, policy, ordinance,
regulation or decision.   See Monell v. Dep't of Soc. Svcs., 436
U.S. 658, 690 (1978).   Specifically, Plaintiff must plead three
elements: "(1) an official policy or custom that (2) causes the
plaintiff to be subjected to (3) a denial of a constitutional

right." <u>Batista v. Rodriguez</u>, 702 F.2d 393, 397 (2d Cir. 1983).

Where a plaintiff simply alleges "constitutional torts committed

by city employees without official sanction," a claim for

municipal liability must fail. <u>Amnesty America v. Town of West</u>

<u>Hartford</u>, 361 F.3d 114, 125 (2d Cir. 2004).

A plaintiff may satisfy the <u>Monell</u> pleading criteria in

several ways. For example, a plaintiff may allege that a

municipality's official policy or ordinance is unconstitutional

on its face; or that the ordinance is constitutional on its face,

but "the city causes its employees to apply it

unconstitutionally, such that the unconstitutional application

might itself be considered municipal policy. . . . Such

circumstances may be found . . . where the city is aware that its

policy may be unconstitutionally applied by inadequately trained

employees but the city consciously chooses not to train them."

<u>Amnesty</u>, 361 F.3d at 125.

Here, Plaintiffs allege a specific policy of targeting

African American and Hispanic males for traffic stops. The

alleged <u>Monell</u> violation could not be more clear. <u>See</u> <u>Perez</u>,

1999 WL 1495444 at *4 (finding that plaintiff sufficiently pled a

<u>Monell</u> claim, where the Complaint alleged a "municipal policy [of

racial profiling] and a causal link between that policy and the

constitutional violation").

Accordingly, the County's motion to dismiss Plaintiffs' § 1983 claims is DENIED.

C. The John Doe Defendants Objections

The John Doe Defendants ("John Does") rely upon two grounds in support of their motion to dismiss. First, they raise a specific Rule 8 objection to, _inter_ _alia_, Plaintiffs' use of the name "John Doe" to join them in this action. Second, the John Does argue that, notwithstanding Plaintiffs' compliance - or lack thereof - with Rule 8, they are entitled to qualified immunity.

1. The Sufficiency Of Plaintiffs' Allegations Concerning The John Does

At the outset, it is important to recognize the two classes of John Doe Defendants that Plaintiffs have distinguished in this action. John Does 1-40 are ostensibly SCPD officers that have effectuated race-based traffic stops under color of state law. John Does 41-50 are ostensibly the Supervisors of John Does 1-40, who have "established, implemented and/or enforced unlawful and unconstitutional policies and practices . . . and have evinced deliberate indifference to plaintiffs' legal rights." (Compl. ¶¶ 20-21.)

The allegations concerning John Does 1-40, therefore, are detailed through each of the named Plaintiffs' testimonials

23

concerning interactions with SCPD officers. The allegations concerning John Does 41-50 are detailed in Paragraphs 27-29 of the Complaint. Specifically, Plaintiffs allege that John Does 41-50 were (and are) aware of a race-based "drug courier profile" adopted by the County and Dormer and have done nothing to stop it. Such allegations are sufficiently specific to support a § 1983 claim against both classes of John Does.

With respect to the John Does' second argument, the Court will not strike Plaintiffs' claims simply because of the use of the term "John Doe" to join them in this action. While it is true that, as a general rule, the use of "John Doe" to identify a defendant is not favored, "courts have recognized that situations arise in which the identity of alleged defendants may not be known prior to the filing of a complaint. In such situations, the plaintiff should have an opportunity to pursue discovery pursue discovery to identify the unknown defendants." Covington v. Warden of C-95, No. 93-CV-1958, 1996 WL 75211 at *4 (E.D.N.Y. Feb. 8, 1996); see also Petway v. City of New York, No. 02-CV-2715, 2005 WL 2137805 at *4 (E.D.N.Y. Sept. 2, 2005). Accordingly, the Court directs Plaintiffs to undertake, in earnest, all efforts necessary to ascertain the identities of the John Doe Defendants that Plaintiffs purport to bring this action against.

2.  Qualified Immunity

    Having determined that Plaintiffs have sufficiently
alleged a § 1983 claim, the Court considers the John Does' claim
of qualified immunity.  See Saucier v. Katz, 533 U.S. 194, 201,
121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001) (stating that the
threshold question, before passing on qualified immunity, is
whether plaintiff has alleged any constitutional violation).

    Qualified immunity shields government officials from
civil liability resulting from the performance of their
discretionary functions only where their conduct "does not
violate clearly established statutory or constitutional rights of
which a reasonable person would have known." Harold v.
Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396
(1982); see Lennon v. Miller, 66 F.3d 416, 420 (2d Cir. 1995).
In order to establish entitlement to qualified immunity,
Defendants must demonstrate that: (1) their actions did not
clearly violate Plaintiffs' constitutional rights, or (2) it was
objectively reasonable for them to believe their actions did not
violate Plaintiffs' constitutional rights.  See Salim v. Proulx,
93 F.3d 86, 89 (2d Cir. 1996).

    However, even if a defendant's conduct was objectively
reasonable, where, as here, an unconstitutional motivation is
also alleged, he may be denied the qualified immunity defense.

See <u>Sheppard v. Beerman</u>, 94 F.3d 823, 828 (2d Cir. 1996)). In this regard, the Court notes that, although "a qualified immunity defense may be advanced on a 12(b)(6) motion, it faces a 'formidable hurdle' when advanced at such an early stage in the proceedings." <u>The Cathedral Church of the Intercessor v. The Incorporated Village of Malverne</u>, 353 F. Supp. 2d 375, 391 (E.D.N.Y. 2005) (quoting <u>McKenna v. Wright</u>, 386 F.3d 432, 434 (2d Cir. 2004).

John Does 1-40 claim that they are entitled to qualified immunity because they were justified by reasonable suspicion and/or probable cause in stopping each of the named Plaintiffs. (Defs.' Mem. of Law at 7-8.) As explained above, however, all Plaintiffs have alleged that either: there was no reason to stop them; the stops were motivated by an impermissible race-based classification; or the John Does exceeded the scope of a reasonable stop. Assuming the facts, as the Court must, in a light most favorable to Plaintiffs, the issue of qualified immunity may not properly be disposed of at this time. <u>See Cathedral Church</u>, 353 F. Supp. 2d at 391.

D.    <u>Dormer's Objection</u>

Defendant Dormer contends that Plaintiffs' § 1983 against him must be dismissed because the Complaint fails to adequately allege his participation in the violation of their

constitutional rights.  See Back v. Hastings On Hudson Union Free

School Dist., 365 F.3d 107, 127 (2d Cir. 2004) (recognizing that

§ 1983 may not be imposed against a defendant simply because they

"held a high position of authority").   The Court disagrees.

The pertinent allegations with respect to Dormer are:

Richard     Dormer     ("Dormer"),     is     the
Commissioner of Police for Suffolk County

When    the    videotape    of    the    [UPN   9]
investigation was shown to defendant, Dormer,
as  the  highest  ranking  police  official  in
Suffolk   County,   he   stated,   "this   is   not
racial  profiling,  but  good  police  work."

Defendant[]   .   .   .   Dormer   allowed   and
encouraged  .  .  .  police  officers,  including
John Does, to stop detain or search motorists
based  on  matches  with  a  race  based  "drug
courier   profile"   that   explicitly   targeted
young Black and Hispanic males . . . .

(Compl. ¶¶ 19, 26-27.)

The   foregoing   averments   allege   Dormer's   personal

involvement  in  developing  a  purported  race-based  profile  to  be

observed  by  SCPD  officers.    Thus,  Plaintiffs  have  adequately

alleged their § 1983 claims with respect to Dormer. See Back, 365

F.3d at 127.  Dormer's protestations that he has adopted a policy

that  prohibits  impermissible  race-based  classifications  may  be

considered  at  a  later  date,  but  are  ill-suited  for  consideration

at this juncture.

IV.  Plaintiffs' § 1981 Claims

"To establish a claim under § 1981, a plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute."  See Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1087 (2d Cir. 1993).  Here, the most pertinent of the enumerated activities is the entitlement to "full and equal benefit of all laws and proceedings for the security of persons and property."  42 U.S.C. § 1981(a)(2005).

Defendants only challenge whether Plaintiffs have adequately alleged "any facts which would show defendants' intent to discriminate on the basis of plaintiff's race."  (Def.'s Mem. of Law at 10.)  The Court agrees, in part.

While named Plaintiffs Feliciano and Olujobi have alleged that they were pulled over, without probable cause, ostensibly pursuant to a racial profile adopted by the County, Plaintiffs Lacy, Brown and Scott have failed to allege any such claim.  Plaintiffs Lacy and Brown do not allege any facts indicating that race played any role in their detention. Further, as females, neither one could possibly match up with the alleged race-based "drug courier profile."  Plaintiff Scott's

§ 1981 claims are similarly lacking, as she provides a particularized reason for why she was detained: her testimony against an SCPD officer at trial. While such detentions may have been improper, Scott's factual allegations do not support a finding that the SCPD officers that stopped her acted with an intent to discriminate.

Accordingly, Defendants' motion to dismiss Plaintiffs' § 1981 claims is DENIED with respect to Plaintiffs Feliciano and Olujobi and GRANTED with respect to all other named Plaintiffs. Plaintiffs, however, are granted leave to re-plead their § 1981 claims.

V.   State Law Claims For Negligent Hiring And Supervision

Defendants move to dismiss Plaintiffs' state law claims for negligent hiring and supervision due to Plaintiffs' failure to serve Defendants with a Notice of Claim. Under New York Municipal Law Section 50-e, service of a notice of claim within ninety days from the accrual of a cause of action founded in tort is a condition precedent to a lawsuit against the County or its employees. See Pretino v. Wolben, 84 A.D.2d 830, 831, 444 N.Y.S.2d 190 (2d Dept. 1981).

Because Plaintiffs do not dispute the preclusionary effect of New York's Notice of Claim requirements, Plaintiffs' claims for negligent hiring and supervision are hereby DISMISSED.

<u>CONCLUSION</u>

For the reasons explained above, Defendants' motion is GRANTED in part, and DENIED in part. The Court hereby DISMISSES all claims alleged by Plaintiffs Derrick, Acevedo, and Cedeno; DISMISSES the § 1981 claims alleged by Plaintiffs Lacy, Brown and Scott; and DISMISSES all Plaintiffs' state law claims for negligent hiring and supervision. Defendants' motion is DENIED in all other respects. Should Plaintiffs wish to file an amended complaint, they may do so within thirty (30) days of the date of this Order.

SO ORDERED

<u>/s/ JOANNA SEYBERT</u>
Joanna Seybert, U.S.D.J.

Dated:     Central Islip, New York
           September 27, 2005