**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
ANGEL FELICIANO, SABRINA LACY,
CHRISTOPHER OLUJOBI, DOLORES
BROWN, and LESLIE SCOTT for themselves
and on behalf of all other persons similarly
situated,

|  |  |
|---|---|
| Plaintiff, | **MEMORANDUM** |
|  | **AND ORDER** |
| - against - |  |
|  | CV 04-5321 (JS) (AKT) |

COUNTY OF SUFFOLK, RICHARD
DORMER Suffolk County Police
Commissioner, JOHN DOE #1 through 40
being Suffolk County police officers who
stopped or searched plaintiffs, JOHN DOE
#41 through 50 being unidentified ranking
police officers who supervised John Doe #1
through 40,

Defendants.
-----------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

In this case brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1981, Plaintiffs allege

that they were subject to unlawful racial profiling at traffic stops in Suffolk County.  Plaintiffs

move to amend the Complaint to replace certain of the "John Doe" Defendants with specifically

named Suffolk County police officers.  DE 95.  For the reasons that follow, Plaintiffs' motion is

GRANTED in part and DENIED in part.

I.    <u>BACKGROUND</u>

A.    **Factual Allegations**

This case arises from allegations that Defendants engaged in a pattern and practice of

race-based traffic stops, searches, wrongful detentions, false imprisonment, and other harassment

of non-white motorists (Hispanic and African-American) traveling in Suffolk County, New York. Compl. [DE 1] ¶ 1. For example, Plaintiff Angel Feliciano, an Hispanic male and veteran officer of the New York City Police Department, alleges that he was pulled over for no reason other than his status as a minority. *Id*. ¶¶ 7, 45. According to the Complaint, all of the named Plaintiffs have allegedly been stopped in Suffolk County based upon their race, without legal justification and/or have been searched without probable cause by Suffolk County police officers. *Id*. ¶ 15.

At some point prior to the filing of this action, a news media organization, WORYV UPN News 9, conducted an investigation into complaints that Suffolk County police officers engaged in discriminatory treatment of African-American and Hispanic motorists. *Id*. ¶ 24. According to the Plaintiffs, the investigation, which included sending testers to different parts of Suffolk County, revealed that Suffolk County police officers treated an African-American motorist differently from a Caucasian motorist in similar circumstances. *Id*. ¶ 25. Plaintiffs further allege that when Defendant Richard Dormer, the Suffolk County Police Commissioner, was shown a videotape of the investigation, he stated that it reflected "not racial profiling, but good police work." *Id*. ¶ 26. In addition to Commissioner Dormer and the County of Suffolk, Plaintiffs named as Defendants in the original Complaint John Doe #1 through 40 (Suffolk County police officers), and John Doe #41 through 50 (ranking Suffolk County police officers who supervised John Doe #1 through 40) (collectively, the "John Doe Defendants").

**B.    Procedural History**

The original Complaint was filed on December 8, 2004. On September 27, 2005, Judge Seybert granted, in part, Defendants' motion to dismiss. DE 19. Specifically, Judge Seybert

made the following rulings: (1) the § 1983 claims of Plaintiffs Derrick, Acevedo and Cedeno were impermissibly vague, *id*. at 16; (2) the § 1981 claim should be dismissed with respect to all of the named Plaintiffs except Feliciano and Olujobi, *id*. at 29; and (3) Plaintiffs' state law claims for negligent hiring and supervision should be dismissed, *id*. The Memorandum and Order also addressed the arguments raised by the John Doe Defendants through the Suffolk County Attorney. The John Doe Defendants argued that the use of the name "John Doe" without providing any identifying information ran afoul of Rule 8 of the Federal Rule of Civil Procedure and also raised a qualified immunity defense. *See* DE 2-10. Judge Seybert rejected these arguments and directed "Plaintiffs to undertake, in earnest, all efforts necessary to ascertain the identities of the John Doe Defendants that Plaintiffs purport to bring this action against." DE 19 at 24. Plaintiffs were granted leave to file an amended complaint within thirty (30) days of that decision. No amended complaint was filed within that time period.

United States Magistrate Judge James Orenstein, who was then assigned to this case, met with counsel on December 9, 2005 and issued a scheduling order for discovery. DE 23. In that Order, Judge Orenstein, after setting a June 20, 2006 fact discovery deadline on the individual claims of the five named Plaintiffs, left open the deadline for commencing class certification motion practice as well as the remaining dates for discovery. *Id*.

This case was subsequently reassigned to the undersigned in March 2006. On April 4, 2006, I held a status conference with counsel. DE 24. At that time, the "issue of identifying the 'John Does' in the Complaint [had] not been resolved through discovery" for reasons explained by the parties and accepted by the Court. Counsel were then reminded of the June 20, 2006 discovery deadline.

A further status conference was held on June 13, 2006.  DE 26.   The parties advised the Court at that time that Defendants had provided Plaintiffs with some information regarding the identification of the John Doe officers, but Defendants needed assistance from Plaintiffs to enable them to identify additional officers.  In addition, both sides were still awaiting production of certain audio and videotapes as well as a Channel 9 tape.  *Id*.  At that conference, the Court held in abeyance the discovery deadline pending receipt of an anticipated letter motion from Plaintiffs on several discovery issues.

After receiving letter motions from both parties, the Court held a conference on July 13, 2006.  DE 32.  At that conference, the parties informed the Court that Plaintiffs' counsel had requested that Defendants "identify and correlate which officers were involved with which specific incidents . . ." and that Defendants' counsel agreed to do so.  In addition, Plaintiffs were still seeking the identities of third parties who had made racial profiling complaints against Suffolk County Police Department officers while the Defendants wanted an opportunity to move for a protective order.  Defendants were given (ten) 10 days to make the motion.  Likewise, Defendants moved to compel Plaintiff Angel Feliciano to provide release authorizations for his NYPD employment and personnel files.  However, Defendants were unable to establish the relevancy of such records and the motion was denied.  *Id*.   Ultimately, the Court extended the discovery deadline for an additional sixty (60) days.  Multiple subsequent conferences were held over the next 15 months to discuss ongoing discovery issues, including various motions to compel and a protracted and somewhat unusual series of disputes pertaining to Plaintiffs' expert discovery.  DE 39, DE 43, DE 49, DE 59, DE 64, DE 72.

On December 19, 2007, Plaintiffs filed a motion to certify a class and for leave to amend the Complaint. DE 63. Plaintiffs sought to amend the Complaint in order to: (1) remove from the caption the names of the Plaintiffs who were dismissed from the case in 2005; (2) "drop" Plaintiffs Sabrina Lacy and Leslie C. Scott as named Plaintiffs (although not as class members) based on their failure to appear for their depositions; (3) add as Defendants "now-identified" individuals; and (4) "reflect[] litigation and discovery activity to date." DE 63-4 at 10. Defendants opposed the motion to the extent that it sought to add new Defendants on the grounds that the proposed amendments were futile since the claims were barred by the statute of limitations. DE 74.

On January 22, 2008, this Court issued an Order striking certain portions of Plaintiffs' expert report. DE 73. Plaintiffs appealed this decision to Judge Seybert. DE 76. Because the determination of the appeal would potentially affect the pending motion to amend and the motion to certify the class, Judge Seybert extended the deadline for Plaintiffs' reply in support of their motion to amend and motion for class certification until the appeal of the expert report Order was decided. DE 79. Thereafter, Judge Seybert denied the motion to amend and motion for class certification for administrative purposes, without prejudice, pending a decision on the appeal of the expert report Order. *See* Electronic Order dated September 30, 2008.

On February 4, 2009, Judge Seybert issued her decision regarding the appeal and upheld this Court's ruling regarding Plaintiffs' expert report. DE 81. In that February 4, 2009 Order, Judge Seybert stated that "Plaintiffs may renew their motion to certify the class and amend the Complaint based on the papers previously submitted or they may submit new motion papers and supporting documents." DE 81 at 9. She further directed that in "the event that Plaintiffs wish to

proceed on their previously submitted papers, they should indicate so in their Notice of Motion."
*Id.* On February 12, 2009, Plaintiffs' counsel sought to replace his expert who had become ill
[DE 82] and a series of motions followed.

At the Status Conference conducted by the Court on November 24, 2009, Plaintiffs'
counsel informed the Court that he no longer planned to move for class certification. DE 89.
Plaintiffs' counsel also informed the Court that he wished to amend the Complaint, asserting his
reliance on Judge Seybert's February 4, 2009 Order [DE 81]. *Id.* Defendants' counsel objected
on the grounds that the deadline to move to amend had passed based upon this Court's
September 30, 2009 Order [DE 87] which stated that, in accord with Judge Seybert's February 4,
2009 directive, "Plaintiffs' counsel has until October 28, 2009 to renew Plaintiffs' motion to
amend based on the papers previously submitted or. . . submit new motion papers." DE 89.

For reasons having nothing to do with the parties, the Court did not reconvene with
counsel until August 3, 2012. During that conference, Plaintiffs' counsel directed the Court to
the Supreme Court's decision in *Krupski v. Costa Crociere S.p.A.*, - - - U.S. - - - , 130 S. Ct.
2485 (2010), which counsel believed governs his request to amend the Complaint. DE 92. The
Court conducted a cursory review of the *Krupski* case during the conference. The parties were
then given a week to confer and decide whether to stipulate to an amended complaint in light of
the Supreme Court decision or to submit a proposed briefing schedule. *Id.* The parties were not
able to reach an agreement and, therefore, submitted briefs in accordance with the schedule set by
the Court.

### C. Proposed Amendments

The Proposed Amended Complaint ("PAC"), DE 95-2, differs from the original Complaint in several respects. First, the PAC seeks to substitute the following individuals as Defendants in place of the John Doe Defendants: Police Officer Sammy Saleh, Shield #5677; Police Officer Barbara Bellissimo, Shield #4024; Police Officer Daniel Colondona, Shield #2122; Police Officer Randy Misa, Shield #5206; Police Officer Peter Collins, Shield #5706; Police Officer James Cullen, Shield # 5706; and Police Officer Terrence McGovern (the "Proposed Defendants"). Unlike the Complaint, the PAC does not distinguish between line officers and supervisory officers. All of the Proposed Defendants are described as white female and male police officers employed by Suffolk County. PAC ¶¶ 13-19. In addition, some of the wording of the factual allegations has changed. For example, there is a different description of the WORYV UPN News 9 video (PAC ¶ 28) and the reference to the "drug courier profile" in ¶ 27 of the original Complaint has been removed. Plaintiffs have also removed the class allegations and no longer include Plaintiffs Lacy, Derrick, Acevedo, Cedeno, and Scott as named Plaintiffs. The three remaining Plaintiffs are Angel Feliciano, Christopher Olujobi and Dolores Brown.

Plaintiffs also propose amendments to certain factual allegations describing the experiences of the remaining named Plaintiffs. For example, the Complaint describes traffic stops of Feliciano on March 19, 2004 and May 5, 2004. The PAC, however, alleges that Feliciano was subjected to race-based stops from February 16, 2001 through May 4, 2004 and specifically describes incidents on February 16, 2001, November 22, 2001, January 28, 2002, March 1, 2002, August 24, 2003, September 1, 2003, March 19, 2004 and May 4, 2004. *See*

PAC ¶¶ 41-49.  According to the PAC, Feliciano never received a ticket during any of the stops nor an explanation of the reason for the stop.  *See id.* ¶ 36.  Feliciano asserts that during the March 19, 2004 stop near his home, the Suffolk County police officers who pulled him over harassed him until he identified himself as an NYPD officer.  *Id.* ¶ 48.

With respect to Plaintiff Olujobi, the Complaint describes incidents which took place on June 20, 2004 and June 29, 2004, while the PAC alleges that Olujobi was subjected to race-based stops between June 4, 2004 through March 24, 2006.  *See id.* ¶¶ 51-67.  After being pulled over on June 4, 2004 and having his car searched without being given any meaningful answer as to why, Olujobi went to the Third Precinct to formally complain about the police conduct.  *Id.* ¶ 59.  Olujobi asserts that the police officers at the front desk refused to take his complaint.  *Id.* ¶ 60.  Both the Complaint and the PAC reference only a single incident involving Plaintiff Brown on January 4, 2004.  *See id.* ¶ 68.  Brown states that two white male police officers pulled her over, claimed she had a broken tail light, ordered her out of her car, verbally harassed her for two hours and searched her car and belongings without her consent.  *Id.* ¶¶ 69-70.  The officers then followed Brown home although they did not give her a ticket.  *Id.* ¶¶ 71-72.

## II.  LEGAL STANDARD

Rule 15(a) of the Federal Rules of Civil Procedure provides that in cases where a party cannot amend as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave."  *Accord Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002); *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991); *Argro v. Osborne*, No. 3:12-CV-910, 2013 WL869303, at *9 (N.D.N.Y. Mar. 6, 2013).  A court "should

freely give leave when justice so requires" and such leave is within the court's discretion. *See* Fed. R. Civ. P. 15(a); *Grace v. Rosenstock*, 228 F.3d 40, 56 (2d Cir. 2000); *Carrion v. Singh*, No. 12-CV-0360, 2013 WL 639040, at *11 (E.D.N.Y. Feb. 21, 2013)

Notwithstanding the foregoing principle, leave to amend may be denied where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Williams v. Citigroup Inc.*, 659 F.3d 208, 213-14 (2d Cir. 2011) (quoting *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227 (1962)); *SCS Commc'n, Inc. v. Herrick Co.*, 360 F.3d 329, 345 (2d Cir. 2004) ("[U]nder Rule 15(a), leave to amend a pleading may *only* be given when factors such as undue delay or undue prejudice to the opposing party are absent.") (emphasis in original). "The party opposing the motion for leave to amend has the burden of establishing that an amendment would be prejudicial." *Fariello v. Campbell*, 860 F. Supp. 54, 70 (E.D.N.Y. 1994); *see also European Cmty. v. RJR Nabisco, Inc.*, 150 F. Supp. 2d 456, 502-03 (E.D.N.Y. 2001); *Saxholm AS v. Dynal, Inc.*, 938 F. Supp. 120, 123 (E.D.N.Y. 1996). The opposing party likewise bears the burden of establishing that an amendment would be futile. *See Amaya v. Roadhouse Brick Oven Pizza, Inc.,* 285 F.R.D. 251, 253 (E.D.N.Y. 2012) (citing *Blaskiewicz v. County of Suffolk*, 29 F. Supp. 2d 134, 137-38 (E.D.N.Y. 1998)).

When an amended pleading changes a party or a party's name and the statute of limitations has run, the party seeking the amendment must also comply with Rule 15(c). *Krupski* 130 S. Ct. at 2489. Rule 15(c)(1) provides in pertinent part that an amendment relates back to the date of the original pleading when:

(B) the amendment asserts a claim or defense that arose out of the conduct, transaction or occurrence set out – or attempted to be set out – in the original pleading; or

(C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by the amendment:

(i) received such notice of the action that it will not be prejudiced in defending on the merits; and

(ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Unlike Rule 15(a), which, by its terms, gives discretion to the court in deciding whether to grant or deny a motion to amend, the language of Rule 15(c) is mandatory. *Krupski*, 130 S. Ct. at 2496. Thus, it is improper to consider factors such as "undue delay" or "dilatory motive" in considering whether an amended pleading relates back. *Id*.

## III.   DISCUSSION

### A.   Motion to Amend

#### 1.   *Leave to Amend Under Rule 15(a)*

Defendants' opposition focuses solely on whether the claims against the Proposed Defendants are timely by virtue of the "relation back" doctrine. This argument goes to the futility of the proposed amendments and Defendants do not address the other Rule 15(a) factors such as undue delay, bad faith, dilatory motive, etc. Nevertheless, based on the lengthy procedural history of this case, as set forth in Section IB, the Court concludes that Plaintiffs have not engaged in undue delay, bad faith, or any other conduct which would warrant denial of leave to amend. *See Williams*, 659 F.3d at 213-14. The initial motion to amend was filed on

December 19, 2007.  DE 63.[1]  Mere delay "absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend."  *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) (quotations and citation omitted); *accord Soroff Trading Dev. Co., Ltd. v. GE Microgen, Inc.*, 283 F.R.D. 142 (S.D.N.Y. 2012).  There is no evidence of bad faith or undue prejudice here; thus, the resolution of this motion turns on whether the claims against the Proposed Defendants are futile because they are time-barred.

### 2. Timeliness of the Claims Against the Proposed Defendants

The original Complaint in this case was filed on December 8, 2004.  DE 1.  The statute of limitations for claims brought pursuant to 42 U.S.C. § 1983 depends on the law of the state in which the claims are brought.  For cases brought in New York, the statute of limitations is three years.  *See Patterson v. Cnty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004); *Rodriguez v. City of New York*, No. 10-CV-1849, 2011 WL 4344057, at *2 (S.D.N.Y. Sept. 7, 2011).  The statute of limitations for claims brought pursuant to 42 U.S.C. § 1981 is also three years unless the claims arise out of a post-1990 Act of Congress such as the 1991 Amendments to § 1981 (pertaining to discrimination in contractual relationships), in which case the statute of limitations is four years.  *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 124 S. Ct. 1836 (2004); *Ortiz v. City of New* York, 755 F. Supp. 2d 399, 404-05 (E.D.N.Y. 2010); *Fernandez v. M&L Milevoi Mgmt., Inc.*, 357 F. Supp. 2d 644, 649 (E.D.N.Y. 2005).  Since the § 1981 claim in this case is not

---

[1]     The Court will analyze the motion as of the original date of filing on December 19, 2007, not the more recent filing in 2012 since, when the original motion to amend was denied, it was denied without prejudice and with the right to renew.  *See* Electronic Order dated September 30, 2008.

brought under the 1991 Amendments, the three-year statute of limitations applies here. *See*

*Patterson*, 375 F.3d at 225.

It is well-settled that "'John Doe' pleadings cannot be used to circumvent statutes of

limitations because replacing a 'John Doe' with a named party in effect constitutes a change in

the party sued.'" *Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 468 (2d Cir. 1996);

*Archibald v. City of Hartford*, 264 F.R.D. 371, 372 (D. Conn. 2011). Thus, in order to amend a

pleading to replace John Doe Defendants with named Defendants where the statute of limitations

has run, the claims must relate back as provided by Rule 15(c). Both parties assume that all of

the claims against the Proposed Defendants must relate back in order for them to go forward.

However, the allegedly discriminatory stops described in the PAC took place from February 16,

2001 through March 24, 2006 and are not identical for statute of limitations purposes. The Court

will address the different periods as appropriate.

Plaintiffs filed their original motion to amend on December 19, 2007. At that time, the

statute of limitations for claims arising in the prior three-year period had not yet run. *See*

*Rothman v. Gregor*, 220 F.3d 81, 96 (2d Cir. 2000) ("When a plaintiff seeks to add a new

defendant in an existing action, the date of the filing of the motion to amend constitutes the date

the action was commenced for statute of limitations purposes."). Thus, any claim involving

conduct from December 18, 2004 through December 18, 2007 is timely regardless of whether the

"relation back" principle applies here, and Plaintiffs may amend the Complaint to the extent that

they seek relief for these incidents.[2]  The only Proposed Defendant implicated by this ruling is

Officer Saleh, against whom Plaintiff Olujobi asserts claims arising in this period.  *See* PAC

¶¶ 51, 64.

Certain other incidents alleged in the Proposed Amended Complaint pre-date

December 8, 2001, three-years prior to the filing of the original Complaint, and are therefore

time-barred even if the relation back doctrine applies.  Specifically, Plaintiff Feliciano alleges

that he was stopped on February 16, 2001 and November 22, 2001.  PAC ¶¶ 42-43.  Plaintiffs

acknowledge that these incidents are time-barred and state that the allegations were included only

as "background information" and do not, in any event, involve the Defendants in this case.  Pls.'

Mem. [DE 95-3] at 5.  Plaintiffs may not assert any claims based on incidents that pre-date

December 8, 2001.[3]

The remainder of the incidents for which Plaintiffs wish to hold the Proposed Defendants

liable fall into a third category:  conduct which is only actionable if it relates back to the filing of

the original Complaint on December 8, 2004 (*i.e.*, the claims based on stops dating back to

December 8, 2001).  In order to assert these claims, Plaintiffs must demonstrate that: "(1) the

---

[2]      Although Defendants did not mention this in the brief they submitted in connection with the instant motion, they appear to acknowledge this fact in the opposition brief they submitted on Plaintiffs' original motion to amend.  *See* DE 74 at 2 ("With the exception of Officer Saleh's alleged traffic stop of plaintiff Olujobi in March 2006, all of the incidents alleged in the proposed amended complaint occurred more than 3 years prior to the making of plaintiff's motion to amend.")

[3]      Plaintiffs are not barred from including factual allegations that pre-date December 8, 2001 as background information. The statute of limitations is not a rule of evidence and does not bar the introduction of evidence that predates the limitations period.  *See Martin v. State Univ. of New York*, 704 F. Supp. 2d 202, 223, n. 18 (E.D.N.Y. 2010) (citing *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 102, 122 S.Ct. 2061 (2002)). The Plaintiffs simply cannot assert a damages claim based on the pre-December 8, 2001 incidents.

new claims 'arose out of the conduct, transaction, or occurrence' set forth in the original

pleading, and (2) 'within the period provided for by Rule 4(m) for serving the summons and

complaint,' the new party 'received such notice of the action that it will not be prejudiced in

defending on the merits,' and (3) during the Rule 4(m) service period the new party 'knew or

should have known that the action would have been brought against it, but for a mistake

concerning the proper party's identity.'" *Curry v. Campbell*, No. 06-CV-2841, 2012 WL

1004894, at *3 (E.D.N.Y. Mar. 23, 2012) (quoting Fed. R. Civ. P. 15(c)(1)(C)). As discussed

below, although the first two prongs of the test are satisfied, Plaintiffs cannot demonstrate that

they failed to timely identify the Proposed Defendants due to a mistake.

**a.      Whether the Conduct Arises Out of the Same
         Conduct as the Original Pleading**

Defendants do not dispute that the claims set forth in the Proposed Amended Complaint

arise out of the same transactions as the claims asserted in the original Complaint. In addition to

reflecting changes in the dates of some of the incidents and the wording of some of the factual

allegations, the main distinction between the original Complaint and the Proposed Amended

Complaint is the substitution of the Proposed Defendants for the "John Doe" Defendants. The

underlying alleged conduct – the Suffolk County Police Department's allegedly discriminatory

traffic stops – remains the same and the claims arise out of the same transactions as those

described in the original Complaint. Therefore, the Court finds that Plaintiffs have satisfied the

first element of the relation back test. *See Djangmah v. Falcone*, No. 08 Civ. 4027, 2013 WL

1195261, at *3 (S.D.N.Y. Mar. 25, 2013); *Mendoza v. County of Nassau*, No. 11-CV-02487,

2012 WL 4490539, at *11 (E.DN.Y. Sept. 27, 2012).

### b.     Whether the Proposed Defendants Received
### Notice of the Action within the Rule 4(m) Period

In order to satisfy the second prong of the relation back test, a plaintiff must demonstrate that "'within the period provided by Rule 4(m) for serving the summons and complaint' (which is ordinarily 120 days from when the complaint is filed, see Rule 4(m)), the newly named defendant must have 'received such notice of the action that it will not be prejudiced in defending on the merits.'" *Krupski*, 130 S. Ct. at 2491-92 (quoting Rule 15(c)(1)(C)(I)). Although actual notice is preferable, constructive notice may be sufficient. *Curry*, 2012 WL 1004894, at *3; *Smith v. Westchester Cnty. Dep't of Corr.*, No. 07-CV-1803, 2012 WL 527222, at *4 (S.D.N.Y. Feb. 15, 2012). "Constructive notice is derived from the presumed knowledge of the attorney who represents the original defendant(s) and who would represent the prospective defendant(s) if leave to amend were granted." *Smith*, at *4; *Archibald*, 264 F.R.D. at 380. Knowledge of the lawsuit will be imputed to the attorney who represents the original defendants "so long as there is some showing that the attorney knew that additional defendants would be added to the existing suit." *Id.* at *5; *Byrd v. Abate*, 964 F. Supp. 140, 146 (S.D.N.Y. 1997); *Rodriguez*, 2011 WL 4344057, at *7. The key inquiry is whether the attorney had sufficient knowledge of the identity of the defendant to enable him or her to inform the prospective defendant of the lawsuit and take steps to begin preparing a defense. *See Velez v. Fogarty*, No. 06-CV-13186, 2008 WL 5062601, at *6 (S.D.N.Y. Nov. 20, 2008); *Archibald*, 264 F.R.D. at 380; *Curry*, 2012 WL 1004894, at *4.

Plaintiffs do not argue that the Proposed Defendants had actual notice of the claims. Instead, they argue that the knowledge of the Suffolk County Attorney who represented the

original Defendants should be imputed to the Proposed Defendants. According to Plaintiffs, it should have been obvious that "those officers who racially profiled plaintiffs while motoring in Suffolk County were the intended defendants in this lawsuit." Pls.' Mem. at 6.

The period for providing service of the Summons and Complaint pursuant to Rule 4(m) in this case expired on April 7, 2005 – 120 days from the December 8, 2004 filing of the Complaint. *See* Fed. R. Civ. P. 4(m). Although the original Complaint does not provide any details about the John Doe Defendants, such as their badge numbers or other identifying characteristics, the Complaint does refer to the dates, locations, and time of day of certain of the alleged incidents and also to an Internal Affairs complaint, *see* Compl. ¶¶ 44, 47, 48, 54, 57, 62, 67, facts which should have enabled the Suffolk County Attorney to investigate and match up the identity of at least some of the John Doe Defendants based on the daily duty assignments. *See Curry*, 2012 WL 1004894, at *5 (holding that defendant had constructive notice of the claims against him where the attorney who would ultimately represent him could have reviewed the radio transmissions pertaining to the arrest at issue and learned the identity of the individuals involved). For purposes of establishing constructive notice, courts have held that the attorney need not actually be aware of the specific names of the proposed defendants within the 120 day period, so long as the attorney is aware of the need to obtain this information. *See Byrd*, 964 F. Supp. at 146-147; *Archibald*, 274 F.R.D. at 380. "[T]he inclusion of 'John Doe' defendants clearly signals the plaintiff's lack of knowledge as to the identity of certain defendants, thereby alerting defense counsel, at the beginning of the case, to the existence of defendants that have yet to be identified." *Smith*, 2012 WL 527222, at *8. Here, Plaintiffs included two sets of John Doe Defendants in the complaint, thus alerting the Suffolk County Attorney of the need to identify

those individuals. Indeed, the Suffolk County Attorney, working with Plaintiffs' counsel, was eventually able to identify the Proposed Defendants and produce them for their depositions.[4]

The Court also notes that on February 4, 2005 – prior to the expiration of the Rule 4(m) period – the Suffolk County Attorney filed a motion to dismiss on behalf of the John Doe Defendants. In addition to objecting to Plaintiffs' failure to identify the John Doe Defendants by name, the Suffolk County Attorney raised a substantive qualified immunity argument. DE 19 at 25-26. This fact also weighs in favor of finding constructive notice since it demonstrates that the Suffolk County Attorney was able to take steps toward preparing a defense on behalf of the John Doe Officers and, therefore, they were not prejudiced by the lack of identification. *See Velez*, 2008 WL 5062601, at *6; *Byrd*, 964 F.Supp. at 147 (no prejudice where corporation counsel obtained bifurcation of the claims against defendant corrections officer in order to prepare his defense without distraction from the issue of municipal liability). Finally, Defendants have not raised lack of notice as a grounds for denial of Plaintiffs' motion to amend in either their original opposition or the brief more recently filed. For all of these reasons, the Court concludes that the Proposed Defendants had constructive notice of the claims Plaintiffs asserted against them such that they would not be prejudiced by the untimely amendment.

---

[4]    At the June 13, 2006 status conference, the parties advised the Court that Defendants had provided Plaintiffs with some information regarding the identification of the John Doe officers, but Defendants needed assistance from Plaintiffs to enable them to identify additional officers. DE 26. At the July 13, 2006 conference, the parties informed the Court that Defendants' counsel agreed to "identify and correlate which officers were involved with which specific incidents ... ." DE 32. The officers were eventually deposed. *See* DE 63-4 at 2. Although this activity post-dates the 120 day period, it demonstrates that Defendants possessed the information that led to the identification of the Proposed Defendants.

### c.	Whether the Proposed Defendants Knew or
Should Have Known that the Action Would
Have Been Brought Against It But for a Mistake

The final condition of the relation back doctrine requires that the Proposed Defendants

"knew or should have known that the action would have been brought against [them], but for a

mistake concerning the proper party's identity."  Fed. R. Civ. P. 15(c).  Defendants argue that

there was no mistake which could permit relation back under Rule 15(c) because Plaintiffs knew

of the Proposed Defendants' identity prior to the expiration of the statute of limitations and

because lack of information as to the identity of a John Doe Defendant does not constitute a

mistake.  Defs.' Mem. [DE 97] at 2 (citing *Barrow v. Wethersfield Police Dep't*, 66 F.3d 466,

470 (2d Cir. 1996)).  The Second Circuit addressed the issue of mistaken identity as it relates to

John Doe defendants in *Barrow* and ruled that:

> . . . Rule 15(c) does not allow an amended complaint adding new
> defendants to relate back if the newly-added defendants were not
> named originally because the plaintiff did not know their identities.
> Rule 15(c) explicitly allows the relation back of an amendment due
> to a 'mistake' concerning the identity of the parties (under certain
> circumstances), but the failure to identify individual defendants when
> the plaintiff knows that such defendants must be named cannot be
> characterized as a mistake.

66 F. 3d at 470.  Plaintiffs acknowledge this holding, but argue that it is no longer good law in

light of the Supreme Court's decision in *Krupski*, 130 S. Ct. 2485 (2012).

In *Krupski,* the plaintiff tripped over a cable and fractured her femur while on board the

cruise ship Costa Magica.  *Id*. at 2490.  Based on information on her ticket, Krupski's attorney

sued Costa Cruise Lines, notwithstanding the fact that the ticket identified the carrier as Costa

Crociere S.p.A., an Italian corporation.  *Id.*  The plaintiff's attorney did not seek to add the

correct entity until after the statute of limitations expired. *Id*. at 2487. The Eleventh Circuit ruled that the proposed amendment did not relate back because the plaintiff was made aware of the existence of the correct entity prior to the expiration of the statute of limitations. *Id*. The Supreme Court reversed and, in doing so, made clear that "[t]he question under Rule 15(c)(1)(C)(ii) is not whether [the plaintiff] knew or should have known the identity of [the proper defendant], but whether [the proper defendant] knew or should have known that it would have been named as a defendant but for an error." *Id*. at 2493. However, in *Krupski,* the Supreme Court did not have reason to address the central holding of *Barrow* which is also the key issue in this case: whether a plaintiff's lack of knowledge as to the identity of "John Doe" Defendants can be considered a "mistake" or "error." Because *Krupski* does not address this isolated issue, the Court concurs with the other courts in this Circuit which have concluded that *Barrow* remains good law even after *Krupski*. *See Martinez v. City of New York*, No. 12-CV-3806, 2012 WL 4447589, at *2 n.3 (E.D.N.Y. Sept. 25, 2012); *Felmine v. City of New York*, No. 09-CV-3768, 2012 WL 1999863, at *4 (E.D.N.Y. June 4, 2012); *Bogle v. Melamed*, No. 09-CV-1017, 2012 WL 1117411, at *2 (E.D.N.Y. March 30, 2012); *Urena v. Wolfson*, No. 09-CV-1107, 2011 WL 7439005, at *4 (E.D.N.Y. Aug. 24, 2011); *Rodriguez*, 2011 WL 4344057, at *8; *Dominguez v. City of New York*, No. 10-CV-2620, 2010 WL 3419677, at *3 (E.D.N.Y. Aug. 27, 2010); *c.f. Abdell v. City of New York*, 759 F. Supp. 2d 450, 457 (S.D.N.Y. 2010). It is also worth noting that, without explicitly discussing the effect of *Krupski*, the Second Circuit has cited *Barrow* on the relation back doctrine in other cases decided after *Krupski*, further demonstrating *Barrow's* continued viability. *Southerland v. City of New York*, 680 F.3d 127, 139 n.12 (2d Cir. 2012). Applying *Barrow*, the Court concludes that Plaintiffs have not

satisfied the third prong of the Rule 15(c) test since the Plaintiffs' lack of knowledge as to the identity of the Proposed Defendants is not a mistake within the meaning of the Rule. *See Barrow*, 66 F.3d at 470.

Although not yet endorsed by the Second Circuit, some district courts have found an exception to the ruling in *Barrow* in situations where the defendants withheld identifying information or unreasonably delayed in producing such information. *See Byrd*, 964 F. Supp. at 145-46 (granting leave to amend where plaintiff requested identifying information prior to expiration of limitations period, but defendant failed to provide it until period expired); *Archibald*, 274 F.R.D. at 381-82 (granting leave to amend where defendant's counsel "completely rebuffed or substantially delayed" plaintiff's efforts to discover the identities of officers with whom he interacted). Plaintiffs, however, have made no showing that Defendants engaged in delay tactics or failed to cooperate in the process of identifying the John Doe Defendants. Moreover, after conducting an independent review of the docket, the Court is unaware of any instances of dilatory conduct by Defendants. *See* n.5, *supra*. Therefore, there is no basis for finding an exception to *Barrow* in the current circumstances and the Court concludes that the time-barred claims do not relate back to the filing of the original Complaint.

Based on the foregoing findings, Plaintiffs' motion to amend is GRANTED in part and DENIED in part. Plaintiffs may assert new claims to the extent that the claims are based on conduct during the period December 18, 2004 through December 18, 2007. This includes the claims asserted by Plaintiff Olujobi against Proposed Defendant Saleh. PAC ¶¶ 51, 64. The balance of the claims asserted against the remaining Proposed Defendants are futile since they are time-barred. Plaintiffs therefore may not include these claims in the Amended Complaint.

### B. Other Relief Requested

In addition to the motion to amend relating to the John Doe Defendants, Plaintiffs also seek to: (1) amend the caption to reflect the termination of Joseph Derrick, Juana Acevedo, and Mario Cedeno; (2) amend the caption to remove the names of Plaintiffs Sabrina Lacy and Leslie C. Scott; (3) remove Attorney Emmanual Roy as an attorney of record in this case; and (4) "reflect other changes in this litigation to date, including the removal of individuals whose conduct complained-of is statute-barred in any event." Pls.' Mem. at 2, 4. Defendants ignore these requests and state that it is their "understanding that the sole purpose of the instant motion is to determine whether Plaintiffs should be allowed to amend their complaint." Defs.' Mem. at 1.

As to the request to amend the caption, the record reflects that on April 4, 2006, this Court directed the parties to take appropriate steps to amend the caption in light of Judge Sebyert's Memorandum and Order dismissing certain claims. DE 24. Thereafter, the parties submitted a stipulation with a proposed amended caption removing Joseph Derrick, Juana Acevedo, and Maria Cedeno as Plaintiffs. DE 25. The stipulation was never "so ordered." However, the docket reflects that Derrick, Acevedo, and Cedeno have been terminated as Plaintiffs. At the October 6, 2006 conference, the Court was advised that two of the named Plaintiffs, Sabrina Lacy and Leslie Scott, were not produced for their depositions prior to the discovery cut-off. DE 39. Plaintiffs' counsel stated that he would withdraw those individuals as named Plaintiffs, but not as class members. The Court directed Plaintiffs' counsel to memorialize the withdrawal in a stipulation which was to be filed on ECF by October 13, 2006. The Stipulation was filed on October 14, 2006, but was never "so ordered." DE 41. No further

action from the Court is necessary with respect to Plaintiffs Derrick, Acevedo and Cedeno. As to Plaintiffs Lacy and Scott, the Court hereby "so orders" the Stipulation filed on October 14, 2006 [DE 41] *nunc pro tunc*. The Amended Complaint filed by Plaintiffs shall not include these five individuals as parties.

Although Attorney Emmanuel Roy is listed as co-counsel for the Plaintiffs, the Court notes that Attorney Roy filed an affidavit of resignation from the Bar of the State of New York which was sworn to on November 30, 2009.[5] With no objection having been raised by the Defendants, the Court is granting that aspect of Plaintiffs' motion which seeks to have Emmanuel Roy removed as co-counsel of record in this case.

Finally, it is not entirely clear what Plaintiffs are seeking in their request to amend the Complaint to "reflect other changes in this litigation to date, including the removal of individuals whose conduct complained-of is statute-barred in any event." Pls.' Mem. at 2. To the extent that Plaintiffs are referring to their concession that the incidents which allegedly took place between February 16, 2001 and November 22, 2001, the Court has addressed this matter at p. 13, *infra*.

---

[5] The Departmental Disciplinary Committee of the Appellate Division, First Judicial Department, moved the First Judicial Department for an order pursuant to 22 NYCRR 603.11 accepting the affidavit of resignation of Emmanuel Roy. The Appellate Division, First Judicial Department granted the motion on February 18, 2010. The court further directed that Emmanuel Roy's name be stricken from the role of attorneys and counselors-that-law in the State of New York, effective *nunc pro tunc* to November 30, 2009. A copy of that Order was filed with the Federal Court for the Eastern District of New York on February 22, 2010. *See* Case 1:10-mc-00139.

**IV.   CONCLUSION**

Based on the foregoing information, the Court rules as follows:

(1)    Plaintiffs may amend the Complaint to add claims against Officer Saleh regarding conduct that took place from December 18, 2004 through December 18, 2007;

(2)    Plaintiffs may include in the Amended Complaint conduct which occurred in 2001,  but such material is included solely as background information and may not be the basis for any claim;

(3)    Plaintiffs' motion to amend the caption to remove Joseph Derrick, Juana Acevedo, Mario Cedeno, Sabrina Lacy and Leslie Scott as named plaintiffs is GRANTED;

(4)    Plaintiffs' motion to remove Emmanel Roy as co-counsel of record is GRANTED;

(5)    Plaintiffs' motion to amend to add other claims is DENIED since such claims are time-barred and the motion is denied in all other respects.

The Amended Complaint, modified to comply with the directives in this Memorandum and Order, is to be filed on ECF by April 5, 2013.  Defendants will have until April 26, 2013 to answer or move with respect to the Amended Complaint.

Since the parties do not dispute that all necessary discovery in this case is completed, the Court is setting May 31, 2013 as the deadline for any party to file a letter request to Judge Seybert seeking a pre-motion conference for purposes of making a motion for summary judgment.  Counsel are reminded that Judge Seybert's Individual Practice Rules require the exchange of Rule 56.1 Statements before the letter request can be filed on ECF.

The proposed Joint Pre-Trial Order must be filed on ECF by July 19, 2013.  The Pre–Trial Conference will be held on July 31, 2013 at 2:30 p.m. in Courtroom 910.

**SO ORDERED.**

Dated: Central Islip, New York
      March 28, 2013

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge